CHARLES AND MARION HEFTI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4447-88.     Filed July 31, 1991.

*Charles M. Shaw,* for the petitioners.
*Anthony S. Gasaway* and *Donald L. Wells,* for the respondent.

### SUPPLEMENTAL OPINION

SHIELDS, *Judge:* This case was remanded by the Court of Appeals for the Eighth Circuit for consideration by us of section 301.7609-5(b), Proced. & Admin. Regs., vis-á-vis the

suspension under section 7609(e)[1] of the period of limitations provided by section 6501(a).

On April 15, 1984, petitioners filed with the Internal Revenue Service (IRS) a joint Federal income tax return for 1983. On October 10, 1986, respondent served a third-party summons on the Landmark Bank of St. Louis, Missouri, in which the bank was directed to produce for examination by respondent's agents all books, papers, and other records, which the bank possessed with respect to petitioners' return for 1983. On October 29, 1986, petitioners filed with the U.S. District Court for the Eastern District of Missouri a petition to quash the summons served by respondent on Landmark Bank. On May 1, 1987, the District Court dismissed the petition to quash; and on May 18, 1987, Landmark Bank advised respondent that the records summoned were available to respondent. Respondent obtained the records from Landmark Bank on or before May 22, 1987.

On December 7, 1987, or 3 years and 236 days after petitioners filed their 1983 return, respondent mailed to petitioners a deficiency notice in which he determined deficiencies in and additions to their income taxes for 1983, 1984, and 1985. Petitioners filed a timely petition with this Court seeking a redetermination of the deficiency and additions to tax with respect to only 1983. Before the case was called for trial, petitioners filed a motion for summary judgment contending that respondent's notice of deficiency was not mailed within 3 years after their 1983 return was filed as required by section 6501(a). In connection with their motion, petitioners did not refer to section 301.7609-5(b), Proced. & Admin. Regs., and made no attempt to demonstrate that the regulation was invalid or did not constitute a reasonable interpretation of section 7609(e), as had been determined in a Memorandum Opinion by this Court. See *Henson v. Commissioner*, T.C. Memo. 1986-303, affd. on this issue 835 F.2d 850 (11th Cir. 1988). See also *Sly v. Commissioner*, T.C. Memo. 1988-443; *Schmitz v. Commissioner*, T.C. Memo. 1984-373; *Edwards v. Commissioner*,

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.

T.C. Memo. 1981-669. We denied petitioners' motion for summary judgment.

At trial respondent filed a motion for sanctions against petitioners including the dismissal of their case for failing to cooperate with the Court and respondent in the preparation of their case for trial. After a hearing we granted respondent's motion and dismissed petitioners' case and entered a decision against them for the full amount of the deficiency in, and additions to tax, determined by respondent with respect to 1983.

On appeal the Court of Appeals agreed with our dismissal of petitioners' case but remanded the matter with instructions to review our decision with respect to petitioners' motion for summary judgment and in doing so to consider the scope of section 301.7609-5(b), Proced. & Admin. Regs., vis-á-vis the statutory authorization provided by section 7609(e). *Hefti v. Commissioner,* 899 F.2d 709 (8th Cir. 1990). The Court of Appeals further instructed that, if after such consideration we deem the regulation valid and controlling in this case, we should enter a judgment of dismissal consistent with our previous determination. On the other hand, if we determine that the regulation is inconsistent with section 7609(e), we are directed by the Court of Appeals to enter an order granting petitioners' motion for summary judgment.

Insofar as pertinent here section 7609 provides:

SEC. 7609. SPECIAL PROCEDURES FOR THIRD-PARTY SUMMONSES.
  (a) NOTICE—
    (1) IN GENERAL—IF—
      (A) any summons described in subsection (c) is served on any person who is a third-party recordkeeper, and
      (B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons,

then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an

explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

*   *   *   *   *   *   *

(b) RIGHT TO INTERVENE; RIGHT TO PROCEEDING TO QUASH.—

(1) INTERVENTION.—Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

(2) PROCEEDING TO QUASH.—

(A) IN GENERAL.—Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.

*   *   *   *   *   *   *

(e) SUSPENSION OF STATUTE OF LIMITATIONS.—

(1) SUBSECTION (B) ACTION.—If any person takes any action as provided in subsection (b) and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending.

*   *   *   *   *   *   *

(h) JURISDICTION OF DISTRICT COURT; ETC.—

(1) JURISDICTION.—The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), * * * . An order denying the petition shall be deemed a final order which may be appealed.

## Section 301.7609-5, Proced. & Admin. Regs., provides as follows:

SUSPENSION OF STATUTES OF LIMITATIONS.—(a) *Agent, nominee, etc.* Under section 7609(e), statutes of limitations are suspended if a notified person with respect to whose liability a summons is issued, or the notified person's agent, nominee, or other person acting under the direction or control of the notified person, takes any action as provided in section 7609(b). A person is a notified person's agent, nominee, or other person acting under the direction or control of a notified person for purposes of section 7609(e) if the person with respect to whose liability the summons is issued has the ability in fact or at law to cause the agent, etc., to take the actions permitted under section 7609(b). Thus, in

the case of a corporation, direction or control by the notified person may exist even though less than 50 percent of the voting power of the corporation is held by the notified person.

(b) *Period during which a proceeding, etc., is pending.* Under section 7609(e), the statute of limitations may be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending. This period begins on the date the petition to quash the summons is filed in district court. *The period continues until all appeals are disposed of, or until the expiration of the period in which an appeal may be taken or a request for a rehearing may be made. Full compliance, partial compliance, and noncompliance have no effect on the suspension provisions.* [Emphasis added.] Of course, if the notified person takes no action provided in subsection (b) of section 7609, no suspension of the statutes of limitations takes place. The periods of limitations which are suspended under section 7609(e) are those which apply to the taxable periods to which the summons relates.

(c) *Taking of action as provided in section 7609(b).* Section 7609(b) allows intervention by a notified person as a matter of right upon compliance with the Federal Rules of Civil Procedure. The phrase "takes any action as provided in subsection (b)", found in section 7609(e), includes any intervention, whether or not section 7609(b) is specifically mentioned in the order of the court allowing intervention. The phrase also includes the fulfilling of only part of the requirement of section 7609(b)(2), relating to the right of a person to institute a proceeding to quash. Thus, for instance, if a notified person notifies a person who has been summoned by sending a copy of the petition by registered or certified mail but does not mail a copy of that notice to the appropriate person and office under section 7609(b)(2)(B), the notified person has taken an action under section 7609(e).

(d) *Effective dates.* This section applies to summonses served after December 31, 1982. For the rules applicable to summonses issued on or after March 1, 1977, and before January 1, 1983, see 26 CFR 301.7609-5 (revised as of April 1, 1984).

The only issue before us is the validity of that portion of section 301.7609-5(b), Proced. & Admin. Regs., which pertains to the effect, if any, of the compliance by the bank with respondent's summons on the 3-year period of limitations provided by section 6501(a).

If, as contended by petitioners, the tolling of the 3-year period of limitations as required under section 7609(e) was terminated by the bank's compliance, respondent's notice of deficiency was not timely. This is true because the tolling of the 3-year statute would have started on October 29, 1986, the date the petition to quash the summons was filed by petitioners with the District Court, and would have ended at the latest on May 22, 1987. In such case the total period

for the tolling would have been at most 205 days. Since the deficiency notice was mailed by respondent 236 days after the expiration of the 3-year statute of limitations it is apparent that if petitioners' contention is correct the tolling was not sufficient to cause the notice to be timely.

On the other hand, if as contended by respondent, the tolling was not terminated by the bank's compliance but instead continued until June 30, 1987, the last day for an appeal by petitioners of the dismissal by the District Court of their petition to quash the summons, respondent's deficiency notice was timely. This is true because in such case the tolling of the 3-year statute would have been for 244 days (October 29, 1986 to June 30, 1987) and since the notice was mailed by respondent only 236 days after the expiration of the 3-year period the notice would have been timely.

In support of their contention that the tolling of the 3-year statute provided by section 6501(a) ended with the bank's compliance with respondent's summons, petitioners rely upon two recent opinions by the Eighth Circuit, i.e., *United States v. Meyer,* 808 F.2d 1304 (8th Cir. 1987), *United States v. Orlowski,* 808 F.2d 1283, 1287 (8th Cir. 1986). Petitioners place particular emphasis upon the statement in *Orlowski* "that a proceeding to enforce an IRS summons should be deemed 'pending' until there exists full compliance with the IRS summons or until the sixty-day appeal period following the entry of the judicial enforcement order has lapsed, whichever is shorter." *United States v. Orlowski, supra* at 1287.

In further support of their argument that section 301.7609-5(b), Proced. & Admin. Regs., attempts to unduly enlarge the tolling period provided by section 7609(e), petitioners also rely upon *United States v. Sherlock,* 756 F.2d 1145 (5th Cir. 1985); *United States v. Porter,* 711 F.2d 1397 (7th Cir. 1983); *EEOC v. St. Regis Paper Co.,* 717 F.2d 1302 (9th Cir. 1983) (EEOC subpoena case); *United States v. Equity Farmers Elevator,* 652 F.2d 752 (8th Cir. 1981); *United States v. Trails End Motel, Inc.,* 657 F.2d 1169 (10th Cir. 1981) *United States v. Patmon,* 630 F.2d 458 (6th Cir. 1980); *United States v. Arthur Andersen & Co.,* 623 F.2d 720 (1st Cir. 1980); *United States v. Deak-Perera Intl.*

*Banking Corp.*, 610 F.2d 89 (2d Cir. 1979); *Kurshan v. Riley*, 484 F.2d 952 (4th Cir. 1973); and *Vesco v. SEC*, 462 F.2d 1350 (3d Cir. 1972) (SEC subpoena case).

After reviewing the foregoing opinions we conclude that they are inapposite for the reasons hereinafter set out. First in *United States v. Orlowski, supra,* the situation involved, as stated by the Court of Appeals, was as follows:

In 1980, pursuant to a civil audit of Orlowski's civil tax liability for 1977 and 1978, the IRS issued administrative summonses to five banks requesting that they produce the records of all accounts maintained by Orlowski and his wife during these two years. The IRS also issued a summons to Victor Orlowski in his capacity as the president of Victor Foods, Inc., to produce records of the Victor Foods business. Pursuant to a provision of the Internal Revenue Code, Orlowski was notified of the service of the summonses, I.R.C. section 7609(a)(1) (1982), and, as was his right, Orlowski directed the banks not to comply with the summonses. I.R.C. section 7609(b)(2).[2] On September 4, 1981, the Government filed petitions to enforce each of the summonses in the Eastern District of Missouri. I.R.C. section 7609(d)(2). *On October 13, 1981, Orlowski entered a consent to the enforcement of the IRS summons of the Victor Foods' records.* On October 14, 1981, the district court directed that the summonses against each of the five banks be enforced by separate orders, *and Victor and Sharon Orlowski interposed "no objection" on the record of each case.* Neither the five banks nor Orlowski appealed the district court's orders regarding the bank summonses during the sixty-day period provided under Fed.R.App.P. 4(a)(1). [*United States v. Orlowski, supra* at 1286-1287. Emphasis added.]

Without any reference to section 301.7609-5(b), Proced. & Admin. Regs., the Court of Appeals in *Orlowski* concluded as follows:

We hold that a proceeding to enforce an IRS summons should be deemed "pending" until there exists full compliance with the IRS summons or until the sixty-day appeal period following the entry of the judicial enforcement order has lapsed, *whichever is shorter.* [Emphasis added.] This rule follows directly from the statute. A taxpayer who intervenes in a third party summons under section 7609(b)(1) may appeal a judicial enforcement order. [Fn. refs. omitted.] Such an appeal is valid

---

[2]At the time, sec. 7609(b) read in part as follows:

(2) RIGHT TO STAY COMPLIANCE.—Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to stay compliance with the summons if, not later than the 14th day after the day such notice is given in the manner provided in subsection (a)(2)—

(A) notice in writing is given to the person summoned not to comply with the summons, * * * .

[Sec. 7609(b)(2)(A).]

when filed at any time during the sixty-day appeal period so long as the parties subject to the summonses have not yet complied with the summonses. This circuit, as well as every other circuit that has considered the question, has determined that compliance with an IRS summons moots a taxpayer's appeal of summons enforcement orders. Thus, because the taxpayer has the capacity to appeal an outstanding summons enforcement order at any time during the sixty-day appeal period, a proceeding to enforce an IRS summons is necessarily "pending" during this sixty-day appeal period.

Applying this rule to the present case, the prosecution under count I of Orlowski's indictment is not time-barred. The record reveals that full compliance with the five summonses was not achieved until after the lapse of the sixty-day appeal period. Although three of the five banks subject to the summonses fully complied with the September 4, 1981 enforcement order within the sixty-day appeal period, two banks, the Bank of Old Monroe and the First Bank of St. Louis, did not completely comply with the summonses until April 11, 1983 and April 8, 1983, respectively. Orlowski could have appealed the district court's enforcement orders at any time during the sixty-day appeal period. * * *

[*United States v. Orlowski, supra* at 1287.]

From the foregoing it is apparent that in *Orlowski* compliance with the IRS summons did not occur during the appeal period, as in the case before us, but after the appeal period had expired. Therefore, to the extent that the conclusion in *Orlowski* indicates that the tolling of the limitations period ends on compliance with a summons prior to the end of the appeal period, it is dictum and does not control our decision in this case. See *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

In *United States v. Meyer, supra,* which involved a situation analogous to that in *Orlowski,* i.e., the effect of section 7609(e) upon the statute of limitations for criminal violations as set forth in section 6531, the Eighth Circuit, citing its earlier opinion in *Orlowski* and a Memorandum Opinion of this Court, *Edwards v. Commissioner,* T.C. Memo 1981-669, concluded that the limitation period in section 6531 was tolled during the 60-day period for an appeal from a summons enforcement proceeding even though an appeal was not taken. *United States v. Meyer, supra* at 1306. The holding in *Meyer,* standing alone, would appear to be that the statute of limitations is tolled until the time for appeal has run, without regard to any compliance which precedes the last date for appeal. How-

ever, the appellate court in this case (*Hefti v. Commissioner*) read the opinions in *Meyer* and *Orlowski* as consistent, and as together fashioning the rule that the statute of limitations continues to be tolled during the 60-day appeals period, whether one is taken or not, unless full compliance occurs before the 60 days for appeal has elapsed. *Hefti v. Commissioner, supra* at 713 n.8.

In both *Orlowski* and *Meyer*, compliance with the summons did not occur before the expiration of the appeal period. Therefore, in *Orlowski* and *Meyer* the shorter of the two periods set forth in *Orlowski*, i.e., until expiration of the appeal period or until compliance with the summons, was the expiration of the appeal period. We conclude, therefore, that the case before us is factually distinguishable from both *Orlowski* and *Meyer*. Moreover, since *Orlowski* and *Meyer* and none of the other cases cited by petitioners involved a consideration of the effect of section 301.7609-5(b), Proced. & Admin. Regs., on the tolling of the applicable statute of limitations, it is necessary, as requested by the appellate court in its remand, that we consider the language of the regulation vis-á-vis the statutory provision.

At the outset it is noted that *Meyer* does refer to 301.7609-5(b), Proced. & Admin. Regs., and seemingly approves the regulation's interpretation that the tolling of the limitations period continues to pend during the 60-day period for the filing of an appeal where no appeal is filed. *United States v. Meyer, supra* at 1306. However, the standard laid down by the dictum in *Orlowski* that compliance by the third party with a summons prior to the expiration of the appeal period terminates the tolling of the period of limitations is clearly irreconcilable with the regulation which states that compliance with a summons during the appeal period has no effect on the tolling period provided by section 7609(e).

In determining the propriety of the challenged portion of the regulation, we begin with the observation that the Secretary has authority under section 7805 to promulgate all needful regulations. Insofar as applicable here, regulations may be either "legislative" or "interpretative" in character. *Estate of Pullin v. Commissioner*, 84 T.C. 789,

795 (1985). An "interpretative" regulation is issued under the general authority vested in the Secretary by section 7805, while a "legislative" regulation is issued pursuant to a specific congressional delegation to the Secretary. While the Court of Appeals in its remand directed us to "consider the scope of [the regulation] vis-á-vis statutory authorization from I.R.C. section 7609(e)," (*Hefti v. Commissioner, supra* at 714) section 7609(e) does not specifically delegate to the Secretary the authority to prescribe regulations thereunder. The challenged regulation, therefore, is not legislative in character, but interpretive, and accordingly is subject to the more stringent standard of review applicable to the latter. *Estate of Boeshore v. Commissioner,* 78 T.C. 523, 527 n.5 (1982).

Nevertheless judicial deference is given to an interpretive regulation because "Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code." *United States v. Correll,* 389 U.S. 299, 307 (1967). Such a delegation ensures that "the rules will be written by 'masters of the subject,' [citation omitted] who will be responsible for putting the rules into effect." *National Muffler Dealers Association., Inc. v. United States,* 440 U.S. 472, 477 (1979). While an interpretive regulation is entitled to judicial deference, it is not entitled to as much deference as that owed to a regulation which is promulgated under a specific grant of authority and is thus legislative in character. *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 24 (1982). Moreover, the standard of deference accorded an interpretative regulation only sets "the framework for judicial analysis; it does not displace it." *United States v. Cartwright,* 411 U.S. 546, 550 (1973).

An interpretive regulation may not contradict the unambiguous language of a statute. *Citizen's National Bank of Waco v. United States,* 417 F.2d 675 (5th Cir. 1969). Even if a regulation does not clearly contradict or limit the language of the statute it purports to interpret, the regulation may still be invalid if it is fundamentally at odds with or inconsistent with the statute's origin and purpose. *United States v. Vogel Fertilizer Co., supra* at 26; *CWT Farms, Inc. v. Commissioner,* 79 T.C. 1054, 1062 (1982), affd. 755 F.2d

790 (11th Cir. 1985). Nevertheless in final analysis an interpretive regulation must be sustained unless it is unreasonable and plainly inconsistent with the statute it purports to interpret. *Bingler v. Johnson,* 394 U.S. 741, 750 (1969).

The first step in our analysis of section 301.7609-5(b), Proced. & Admin. Regs., is to determine whether the applicable statute, section 7609(e), is so general or ambiguous as to require an interpretative regulation. *National Muffler Dealers Association, Inc. v. United States, supra* at 476. We, like the Eighth Circuit, find section 7609(e) ambiguous on its face since it does not define the term "proceeding" as used in the phrase "for the period during which a proceeding, and appeals therein * * * [are] pending." Nor does it attempt to define the word "pending" with respect to the period during which the applicable limitations statute is tolled. It is apparent, therefore, that a regulation designed to clear up these ambiguities is warranted.

The next step in our analysis of the regulation is to determine if it implements "the congressional mandate in some reasonable manner." *United States v. Correll, supra* at 307. In making such determination we are directed by the Supreme Court in *National Muffler Dealers Association, Inc., supra* at 477, to consider:

whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose. A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent. If the regulation dates from a later period, the manner in which it evolved merits inquiry. Other relevant considerations are the length of time the regulation has been in effect, the reliance placed on it, the consistency of the Commissioner's interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute. [Citations omitted.]

In considering these factors, we are mindful that the "choice among reasonable statutory interpretations is for the Commissioner, not the courts." *National Muffler Dealers Association, Inc. v. United States, supra* at 488. The issue is whether the Secretary's interpretation of the statute is a reasonable one, rather than the best or only one, and when the regulation implements in some reasonable manner the

congressional intent underlying a provision courts are not at liberty to strike down the regulation merely because the taxpayer offers a more attractive statutory interpretation. *Brown v. United States,* 890 F.2d 1329, 1338 (5th Cir. 1989). Thus we are constrained to uphold the regulation if it has a reasonable basis in the statutory history, even though petitioners' challenge may have some logical force. *Pagel, Inc. v. Commissioner,* 91 T.C. 200, 218 (1988), affd. 905 F.2d 1190 (8th Cir. 1990). By reference to the factors set forth in *National Muffler Dealers Association, Inc. v. United States, supra,* we are satisfied that section 301.7609-5(b), Proced. & Admin. Regs., is entitled to the greatest degree of deference that is applicable to an interpretive regulation.

First, because it is a substantially contemporaneous construction of the statute by the Secretary who is presumed to have been aware of the congressional intent. *National Muffler Dealers Association, Inc. v. United States, supra* at 477; see also *United States Trust Co. v. I.R.S.,* 803 F.2d 1363 (5th Cir. 1986); *Greenacre Foundation v. United States,* 762 F.2d 965 (Fed. Cir. 1985).

Secondly, the relevant portion of the regulation is consistent with the usual understanding of the pendency of a Federal court proceeding. See *Porter v. Investors Syndicate,* 286 U.S. 461, 470 (1932), holding that a recognized meaning of "pending" is "while the time is running for bringing * * * an action;" *American Equitable Assur. Co. v. Helvering,* 68 F.2d 46 (2d Cir. 1933), holding that a proceeding placed on the docket of the Board of Tax Appeals was sufficient to suspend the period of limitations on assessment even though the case was ultimately dismissed for lack of jurisdiction. Thus under section 7609(e)(1) a proceeding is "pending" merely by the fact that it is placed on a docket for consideration and suspends the applicable statute of limitations even though the proceeding may ultimately be dismissed for lack of jurisdiction because of mootness.

In this connection, we note that mootness is a jurisdictional question since article III, section 2 of the Constitution limits the jurisdiction of the Federal judicial system to "cases" and "controversies." If a dispute in litigation turns on the performance of a specific act, e.g., the compliance with an administrative summons, the litigation loses all

substance and becomes moot when that act is performed. In other words, "the thing sought to be prohibited has been done and cannot be undone by any order of court." See *Jones v. Montague,* 194 U.S. 147, 153 (1904). Hence without a case or controversy the court no longer has jurisdiction.

Thirdly, the regulation has been in existence without relevant change since its proposal in 1980, and during its existence Congress has amended section 7609 five times and section 7609(e) has been amended twice without amending section 7609(e)(1) to militate against the regulation's interpretation of the statute.

Section 301.7609-5(b), Proced. & Admin. Regs., was originally proposed on August 21, 1980, after the enactment of section 7609(e) by the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1701, 1976-3 C.B. (Vol. 1) 1. The stated purpose for the regulation was to "provide necessary guidance to the public for compliance with the Act." T.D. 7899, 1983-2 C.B. 266. The regulation was approved in final form on May 3, 1983, and filed on July 18, 1983. Section 7609 was amended by sections 331 and 332 of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, 620-621, 1982-2 C.B. 462, so as to place the burden of commencing a proceeding with respect to a third-party recordkeeper on the taxpayer. This amendment required a corresponding change in the regulation which was approved in final form on May 28, 1986, and filed on June 24, 1986. See T.D. 8091, 1986-2 C.B. 210. In all other respects, the relevant portion of the regulation has remained unchanged since its proposal in 1980.

In the more than 10 years since its proposal the regulation has not only remained unchanged in relevant part but it has also been consistently interpreted by respondent as he does herein. See, e.g., *Henson v. Commissioner,* T.C. Memo. 1986-303, affd. in part and revd. in part on other grounds 835 F.2d 850 (11th Cir. 1988). See also *Sly v. Commissioner,* T.C. Memo. 1988-443; *Schmitz v. Commissioner,* T.C. Memo. 1984-373. During the same period Congress has twice amended section 7609(e) without any revision to section 7609(e)(1).

Finally we must determine whether the regulation comports with the statute's plain language, origin, and purpose

because as stated before the regulation must be sustained unless it is unreasonable and plainly inconsistent with the underlying statute. *Bingler v. Johnson, supra* at 750. In making this determination we first look to the ordinary usage or settled meanings of the words used in the statute by Congress. *Lynch v. Alworth-Stephens Co.,* 267 U.S. 364, 370 (1925); *Mountain Water Co. of La Crescenta v. Commissioner,* 35 T.C. 418, 424 (1960). To do so, it is appropriate to consult dictionaries. *National Muffler Dealers Association, Inc. v. United States, supra* at 480 n.10; *South Jersey Sand Co. v. Commissioner,* 30 T.C. 360, 368 (1958), affd. 267 F.2d 591 (3d Cir. 1959). However, in this instance the accepted dictionary definition of "pending" is of little specific help. See Black's Law Dictionary, 1021 (5th ed. 1979), where the word is defined as "Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; * * * an action or suit is 'pending' from its inception until the rendition of final judgment." Furthermore when used by Congress in a statute a word may have more than one meaning. See *Electrical Workers v. Robbins & Meyers, Inc.,* 429 U.S. 229 (1976), where the Court considered the meaning of "pending" as used in the 1972 amendments to Title VII, Equal Employment Opportunity Act of 1972, Pub. L. 92-261, 86 Stat. 103. In that case, a discharged employee filed a charge with the EEOC more than 90 days after an alleged wrongful discharge. When the charge was filed it was untimely because the relevant statute required that such charges be filed within 90 days after the employee's discharge. Shortly after the charge was filed, the Equal Employment Opportunity Act of 1972, 86 Stat. 113, became effective. This act extended to 180 days the time within which to file such charges and section 14 of the new act provided: "The amendments made * * * shall be applicable with respect to charges pending with the Commission on the date of the enactment of this Act and all charges filed thereafter."

In *Electrical Workers,* the former employer contended that the employee's charge was not "pending" at the time of the amendment made by the 1972 act because it was untimely when filed. In rejecting that interpretation of "pending" the Supreme Court stated:

This reading of "pending"—confining it to charges still before the Commission *and* timely when filed,—is not the only possible meaning of the word, [and] is largely rebutted by the legislative history * * * "Pending" is simply not a term of art that unambiguously carries with it a meaning precisely suited for this situation; equally logical, for example, would be an interpretation that read "pending" to mean "filed and not yet rejected" * * * [*Electrical Workers v. Robbins & Meyers, Inc., supra* at 242, 243.]

In the case before us it is clear from a review of the legislative history of section 7609 that by its enactment Congress sought to strike a balance between the privacy interests of taxpayers and the need of the IRS to employ an administrative summons. Prior to the enactment of section 7609, IRS had authority to issue without notice to the taxpayer a summons to a third-party recordkeeper to examine any "books, papers, records or other data which may be relevant or material" to the investigation of the taxpayer. Sec. 7602. While the third party had the right to challenge the summons, the taxpayer could not intervene in a proceeding to enforce the summons. See *Donaldson v. United States,* 400 U.S. 517, 528-531 (1971). Nor was there any statutory requirement that the taxpayer be informed of a third-party summons. Congress noted that in most circumstances the third-party recordkeeper's "interest in protecting the privacy of the records in question [was] frequently less intense than that of the person to whom the records pertain," and concluded that the involvement of the taxpayer, who had a direct interest in the records sought, would help to curb some of the abuses that had previously existed in the third-party summons procedure. S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 376, 380-381; H. Rept. 94-658, 1976-3 C.B. (Vol. 2) 695. Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, 1976-3 C.B. (Vol. 2) 1, 307-308. Out of concern that the lack of both standing and notice could prevent a taxpayer from effectively safeguarding his right of privacy, Congress enacted section 7609 as part of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, to require the Commissioner to provide notice to a taxpayer within 3 days after the issuance of a summons to a third-party recordkeeper, and to provide the taxpayer with an opportu-

nity to intervene in a proceeding to enforce the summons. Sec. 7609(a) and(b)(1). See H. Rept. 94-658 (1976).

Congress, however, was also concerned that the newly granted protections of section 7609 would not only provide taxpayers with the opportunity to challenge infringements of their constitutional rights but would also enable some taxpayers to abuse the opportunity by instituting or intervening in a proceeding only to delay respondent's examination while the period for assessment continued to run. S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 376, 380-381. Congress accordingly enacted section 7609(e) which provides for a suspension of both the civil (section 6501) and criminal (section 6531) periods of limitation while a "proceeding, and appeals therein, with respect to the enforcement of such summons is pending." The conference report notes that the suspension period continues while the summons is being "protested by the taxpayer." H. Rept. 94-1515 (Conf.) 485 (1976). Both the House and Senate reports refer to the suspension period as "the period of any court action by the [Internal Revenue] Service to enforce the summons." H. Rept. 94-658 (1976), 1976-3 C.B. (Vol. 2) 695; S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 405, 409.

In the conference report to the 1986 amendment, adding to the Code section 7609(e)(2), which operates to toll the applicable period of limitation when a third-party recordkeeper contests a summons, the period for which the applicable statute of limitations is suspended under section 7609(e)(1) is described as the period from the date the "taxpayer intervenes in a dispute between the IRS and the third-party recordkeeper * * * until the entire dispute is resolved." H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 809.

As applicable herein section 7609(e) provides that if, as occurred in this case, a taxpayer files a petition to quash a summons served by respondent on a third party, the running of the period of limitation under section 6501 with respect to the taxpayer shall be suspended for the period during which the proceeding to enforce the summons, including appeals, is pending. In an attempt to clear up the ambiguity in section 7609(e) with respect to the duration of the suspension of the period of limitation, the Secretary

adopted section 301.7609-5(b) of the regulations. Section 301.7609-5(b) provides that the suspension period commences on the date the petition to quash the summons is filed in the District Court and continues until all appeals are disposed of or until the expiration of the period in which an appeal may be taken. The regulation also provides that compliance by the third party with the summons has no effect on the suspension period.

The logic in the Secretary's conclusion that compliance by the third party with the summons has no effect on the suspension period becomes apparent when consideration is given to the difficulties and confusion which would be faced by the tax administrator if he was forced to make a factual determination as to whether there had been compliance with an administrative summons in order to compute the period during which the limitations period is suspended. See *Kersting, supra,* which had to be remanded for further findings with respect to compliance. In this respect, the regulation creates a bright line which both the taxpayer and respondent can apply with little if any difficulty.

From all of the foregoing, and taking into consideration the guidelines laid down in *National Muffler Dealers Association, Inc., supra,* we conclude that (1) section 7609(e) is so general and ambiguous as to require promulgation of an interpretive regulation by the Secretary; (2) section 301.7609-5(b) is a substantially contemporaneous construction of section 7609(e); (3) the regulation in relevant part has remained unchanged since its promulgation and has been consistently applied by respondent; (4) since its promulgation section 7609(e) has been amended twice by Congress without any change being made to 7609(e)(1); and (5) in its statement of the period during which the applicable periods of limitation are suspended under section 7609(e)(1) the regulation comports with the plain language of section 7609(e) its origin and purpose as reflected by its legislative history. Therefore the regulation is reasonable and plainly consistent with its underlying statute.

We turn now to the opinions other than those of the Eighth Circuit in *Orlowski* and *Meyer* which are cited by petitioners in support of their contention. *Supra* p. 185. We note first that two of these cases do not involve administra-

tive summons issued in income tax cases, and consequently, have no bearing upon or relevance to section 7609(e) or section 301.7609-5(b) of the regulations. *EEOC v. St. Regis Paper Co.,* 717 F.2d 1302 (9th Cir. 1983) (EEOC subpoena case); *Vesco v. SEC,* 462 F.2d 1350 (3d Cir. 1972) (SEC subpoena case). While some of the other cases relied upon by petitioners do involve administrative summons issued in income tax cases, they too have no relevance because such cases predate the enactment of section 7609(e) or the adoption of section 301.7609-5(b) of the regulations. These cases include *United States v. Porter,* 711 F.2d 1397 (7th Cir. 1983); *United States v. Equity Farmers Elevator,* 652 F.2d 752 (8th Cir. 1981); *United States v. Trails End Motel, Inc.,* 657 F.2d 1169 (10th Cir. 1981); *United States v. Arthur Andersen & Co.,* 623 F.2d 720 (1st Cir. 1980); *United States v. Patmon,* 630 F.2d 458 (6th Cir. 1980); and *United States v. Deak-Perera Intl. Banking Corp.,* 610 F.2d 89 (2d Cir. 1979).

The two remaining cases relied upon by petitioners, *United States v. Kersting,* 891 F.2d 1407, 1411 n.9 (9th Cir. 1989) and *United States v. Sherlock,* 756 F.2d 1145 (5th Cir. 1985), are clearly inapposite as authority for petitioners' contention that their compliance with the summons in the case before us mooted an appeal from the District Court's dismissal of their petition to quash the summons served on their bank. In *Sherlock* the taxpayer's compliance with an administrative summons obviously did not prohibit the appeal which he prosecuted from the District Court's order directing him to comply even though the Court of Appeals ultimately concluded that there was no longer a controversy because of his compliance with the order. The proceeding, however, was pending within the meaning of section 7609(e)(1) until the appeal was dismissed. *Porter v. Investors Syndicate, supra; American Equitable Assur. Co. v. Helvering,* 68 F.2d 46 (2d Cir. 1933). See also *Bakery Sales Drivers Local Union v. Wagshal,* 333 U.S. 437 (1948), holding that action taken merely in obedience to a court order (injunction) does not moot the appealability of the order.

In *Kersting* the taxpayer again obviously fully perfected an appeal from several orders by a District Court including

an order directing him to comply with a John Doe administrative summons. On appeal the Court of Appeals concluded that the record was not adequate to determine whether Kersting had fully complied with the summons and remanded the case to the District Court with instructions to dispose of the other motions if Kersting's opposition to such motions was not rendered moot by full compliance with the summons. The opinion, therefore, is not authority for petitioners' contention that compliance with an administrative summons renders moot an appeal from an order directing compliance with the summons. In any event the proceeding involving the validity of the summons served on Kersting was pending at least until the appeal was dismissed. In fact the appellate court, citing *Donaldson v. United States,* 400 U.S. 517, 531 (1971), points out that even if the question of the legality of the summons was found on remand to be moot, Kersting could still challenge its legality by moving to suppress in a subsequent trial any evidence obtained by respondent with the summons.

We find that the case before us is very analogous to *American Equitable Assur. Co. v. Helvering,* 68 F.2d 46 (2d Cir. 1933), affg. 27 B.T.A. 247 (1932). That case involved section 277 of the Internal Revenue Act of 1926, ch. 27, tit. II, 44 Stat. 9, 58, and section 504 of the Internal Revenue Act of 1928, ch. 852, tit. III, 45 Stat. 791, 870, which provided for the suspension of the period of limitations with respect to the assessment and collection of an income tax for a period during which a proceeding for the same period was pending before the Board of Tax Appeals. The taxpayer contended that these sections did not operate to suspend the applicable period of limitations unless the board ultimately determined that it had jurisdiction over the action. In rejecting the taxpayer's contention, the Second Circuit stated:

* * * [The taxpayer's] position is that, [since] the Board has held that it had no jurisdiction, * * * there was no proceeding placed on the docket in the sense that expression must be construed to have been used in * * * [sections 277 and 504]. If this be so, the government must treat as a nullity, in advance of a decision by the Board of Tax Appeals, every proceeding which is placed on the docket of the Board which has such infirmities that the Board finally dismisses it for lack of jurisdiction, unless it must accept the risk of the bar of the statute arising before it

can know what the decision will be, and so is protected only by the chance that a decision will be rendered before the unsuspended period of limitation upon assessment has run. * * * The language used in both the clauses providing for the tolling of the statute seems to us to negative such a view. Congress might make the period of limitation whatever it saw fit, and of course it might make no such provision at all. Having established one, it was free to suspend its running upon the occurrence of such conditions as it thought best. It did, verbally at least, make one such condition the mere placing on the docket of the Board of a proceeding in respect to the deficiency. Even though the Board dismissed the proceeding, as it did in this case, for want of jurisdiction * * * the placing of the proceeding upon its docket gave it whatever right to act is involved in determining whether or not the petition was sufficient to give it jurisdiction to decide the matter on the merits. At any rate, a proceeding had been commenced which required the Board of Tax Appeals to make a decision though not necessarily on the merits. Because the effect of the passage of time would be the same whether the Board made its decision on the merits or on some other ground, if the period stated in the statute of limitation meantime expired, it is reasonable to believe that Congress did not intend to have the time a proceeding was pending before the Board counted any more when the decision was a dismissal for want of jurisdiction than when it was not. * * * [*American Equitable Assur. Co. v. Helvering, supra* at 47.]

Petitioners, like the taxpayer in *American Equitable,* contend that "pending" as used in section 7609(e), is to be given a narrow construction, namely that a proceeding cannot pend beyond the point where jurisdiction is ultimately found to be lacking for mootness. Their narrow view of the problem is contradicted by the legislative history of the section. On the other hand section 301.7609-5(b), Proced. & Admin. Regs., is directly in line with such history.

We also find that this case is analogous to the situation frequently found in cases involving claims for litigation costs under section 7430. See, e.g., *Weiss v. Commissioner,* 88 T.C. 1036 (1987), affd. on this issue 850 F.2d 111 (2d Cir. 1988), where we concluded that we had jurisdiction to award litigation costs even though the case had been dismissed because we did not have jurisdiction over the subject matter.

For the reasons stated hereinbefore, we conclude that section 301.7609-5(b), Proced & Admin. Regs., is valid because it harmonizes with the plain language of section 7609(e) and its origin and purpose as disclosed by its legislative history. Consequently under the terms of section

7609(e) as interpreted by a regulation which we find to be valid, the bank's compliance in this case with the summons had no effect on the suspension of the limitation period provided by section 6501(a). Hence the proceeding to enforce the summons was pending until the expiration of the period for appeal and as a result respondent's deficiency notice was timely mailed.

In accordance with the directive of the Court above and consistent with our previous denial of petitioners' motion for summary judgment with respect to 1983,

> *An appropriate order and decision will be entered.*