T.C. Summary Opinion 2004-45

UNITED STATES TAX COURT

DAVID A. BROWN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11482-02S.                    Filed April 6, 2004.

David A. Brown, pro se.

<u>Marc L. Caine</u>, for respondent.

WOLFE, <u>Special Trial Judge</u>: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed. Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code as amended. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

This case arises from a petition for judicial review under section 6330(d) with respect to respondent's decision to proceed with collection of petitioner's Federal income tax liabilities for 1995 and 1996. Respondent has filed a Motion to Dismiss the 1995 Taxable Year on Grounds of Mootness (motion to dismiss for mootness).

Most of the facts have been stipulated. We incorporate by this reference the parties' stipulation of facts and the accompanying exhibits. Respondent has provided a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for both the 1995 and the 1996 taxable years. Petitioner David Brown (petitioner) resided in Glen Head, New York, at the time he filed his petition.

On May 20, 1998, petitioner and his wife (taxpayers) filed a joint return, Form 1040, U.S. Individual Income Tax Return, for the 1995 taxable year (1995 return). The 1995 return showed Federal income tax withholdings of $14,651.14, which resulted in an overpayment credit of $290.14. Taxpayers elected to apply the $290.14 credit to their 1996 tax. On June 18, 1999, respondent issued to taxpayers a Notice of Deficiency (notice of deficiency) for income tax for the 1995 taxable year in the amount of $1,841, an addition to tax under section 6651(a)(1) in the amount of $118, and an accuracy-related penalty under section 6662(a) in the amount of $368. Taxpayers did not petition this Court for a

redetermination of the deficiency, addition to tax, and penalty. On October 25, 1999, respondent assessed the deficiency, addition to tax, penalty, and additional interest of $787.13, in the total amount of $3,114.13.

On March 18, 1999, the taxpayers filed a joint income tax return for the 1996 taxable year (1996 return). The 1996 return showed a tax liability of $25,269, Federal income tax withholdings of $16,148, and an amount owed of $9,121. Respondent did not issue a notice of deficiency for the 1996 taxable year.

On September 17, 1999, petitioner made an inquiry with the Problem Resolution Program (PRP) of the Problem Solving Office (PSO) of the Internal Revenue Service (IRS) regarding the status of the 1996 account. On September 20, 1999, the PSO responded with an acknowledgment letter that either someone from the PSO would contact the petitioner, or petitioner could contact the PRP caseworker, Mrs. C. Ogle (Ms. Ogle). Thereafter, petitioner spoke with Ms. Ogle, and taxpayers made payments in the amount of $14,171.83 (tax payments) toward their tax obligations. These payments are reflected on Form 4340 for both 1995 and 1996 as miscellaneous payments.

On November 23, 1999, respondent applied $2,746.13 of the tax payments to the taxpayers' 1995 account. As reflected on Form 4340 with respect to the taxpayers' 1995 taxable year, this

miscellaneous payment, combined with a $391.23 overpayment credit relating to the taxpayers' 1998 taxable year, satisfied the taxpayers' liability for the 1995 taxable year.[1]  On November 23, 1999, taxpayers had an overpayment credit balance of $15.63.

On November 29, 1999, respondent assessed tax of $25,269, an addition to tax for late filing of $2,207.72, and interest of $2,594.84 relating to the 1996 taxable year.  On December 29, 1999, respondent applied $11,425.70 of the tax payments to the taxpayers' 1996 account.  As reflected on Form 4340 with respect to the taxpayers' 1996 taxable year, the taxpayers' account for the 1996 taxable year received the following credits:  $290.14 overpayment credit from the 1995 taxable year that the taxpayers elected to apply to 1996; $15.63 overpayment credit balance from the 1995 taxable year as described above; and $455.77 overpayment credit from the 1998 taxable year.  As of January 24, 2003, the taxpayers' balance due for the 1996 taxable year was $1,736.32.

On July 18, 2001, respondent mailed to the taxpayers a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice) for the 1995 and 1996 taxable years.  The final notice informed the taxpayers of respondent's intention to levy under section 6331 and of the taxpayers' right to Appeals Office consideration.  The final notice also included a copy of

_____

[1]  From October 25 to November 23, 1999, an increased addition to tax and interest accrued in the amount of $7.60.

Form 12153, Request for a Collection Due Process (CDP) hearing, to request a hearing with the Appeals Office.

On August 20, 2001, respondent received a timely request for a CDP hearing from petitioner.  Petitioner's wife did not sign the request.  On November 8, 2001, respondent sent petitioner a letter acknowledging petitioner's request for Appeals Office consideration and stating that a conference would be scheduled. On February 15, 2002, respondent sent petitioner a letter setting the date and time of the Appeals conference for March 28, 2002. The designated Appeals officer was Elissa Sharp (Ms. Sharp).  The CDP hearing never took place.  On June 10, 2002, respondent issued a Notice of Determination to petitioner for the 1995 and 1996 taxable years.

On July 10, 2002, petitioner filed a petition with this Court.  Petitioner states in his petition that the "interest penalties were excessive beyond what the law provides" and that the IRS "contributed to the time delays yet continued to assess late penalties for periods during its delays."  On February 20, 2003, respondent submitted a motion to dismiss for mootness with respect to the portion of the petition concerning 1995.

If any person liable to pay any tax neglects or refuses to pay that tax within 10 days after notice and demand for payment, the Secretary is authorized to collect the tax by levy upon the person's property.  Sec. 6331(a).  At least 30 days prior to

proceeding with enforced collection by way of a levy on a person's property, the Secretary must notify that person in writing of the Secretary's intent to levy and must provide notice of the administrative appeals available to the taxpayer with respect to the proposed levy and sale and the procedures relating to such appeals. Sec. 6331(d).

Generally, section 6330 provides that "the Commissioner cannot proceed with enforced collection by way of levy until the taxpayer has been given notice of and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, the taxpayer may seek judicial review of the administrative determination". Moorhous v. Commissioner, 116 T.C. 263, 268 (2001). Section 6330(b) describes the administrative review process, providing that a taxpayer can request an Appeals hearing with regard to a levy notice. At the Appeals hearing, the taxpayer may raise certain matters set forth in section 6330(c)(2).

Section 6330(c)(2)(A) provides that a person may raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. Sego v. Commissioner, 114 T.C. 604, 609 (2000). Section 6330(c)(2)(B) provides that the existence and amount of the underlying tax liability can be contested at an Appeals Office hearing only if the taxpayer did

not receive a notice of deficiency for the taxes in question or did not otherwise have an earlier opportunity to dispute the tax liability. Goza v. Commissioner, 114 T.C. 176, 180-181 (2000). The term "underlying tax liability" includes additions to tax and statutory interest that are the subject of the Commissioner's collection activities. Katz v. Commissioner, 115 T.C. 329, 339 (2000). To the extent that the underlying tax liability is at issue, we review the taxpayer's liability de novo. The Court reviews other administrative determinations for an abuse of discretion. Sego v. Commissioner, supra at 610.

1995 Taxable Year

We begin with the 1995 taxable year and respondent's motion to dismiss for mootness. Mootness is a jurisdictional question since Article III, Section 2 of the Constitution limits the jurisdiction of the Federal judicial system to "cases" and "controversies". Hefti v. Commissioner, 97 T.C. 180, 191 (1991), affd. 983 F.2d 868 (8th Cir. 1993). Accordingly, "If a dispute in litigation turns on the performance of a specific act, * * * the litigation loses all substance and becomes moot when that act is performed." Id. at 191-192. Without a case or controversy, this Court has no jurisdiction.

At the time of the issuance of the final notice on July 18, 2001, respondent's account summary showed a balance due for 1995 of $368 plus statutory additions of $90.37. Thereafter,

respondent's records were updated.  According to Form 4340 for the 1995 taxable year, the taxpayers' updated 1995 account reflected not only the tax payments made on November 23, 1999, but also the $391.23 credit from the overpayment of taxpayers' 1998 tax.  Pursuant to the authority conferred by section 6402(a),[2] respondent credited the $391.23 of the overpayment of the taxpayers' 1998 tax against their assessed, uncontested, and unpaid tax liability for 1995.  The result was a $15.63 overpayment credit rather than a balance due.

The taxpayers received a notice of deficiency for the 1995 taxable year but did not seek a redetermination of the tax deficiency, addition to tax, and penalty.  Petitioner, therefore, is not entitled to dispute the existence or amount of the underlying tax liabilities for 1995 at a CDP hearing.  See sec. 6330(c)(2)(B).  Since petitioner no longer can challenge the underlying tax liability for the 1995 taxable year, and the taxpayers' liability for the 1995 taxable year is satisfied, there is no case or controversy for this Court to decide for the 1995 taxable year.  Accordingly, respondent's motion to dismiss for mootness will be granted.

---

[2] Sec. 6402(a) expressly authorizes the Commissioner to credit the amount of an overpayment against any tax liability of the taxpayer.

1996 Taxable Year

As noted above, respondent did not issue a notice of deficiency for the 1996 taxable year.  Petitioner does not dispute the tax deficiency portion of the underlying tax liability.  Rather, through his testimony and as stated on his petition, petitioner is seeking to avoid the addition to tax and the interest that has accrued.

Petitioner contends that the addition to tax assessed must be eliminated because his failure to file was due to reasonable cause.  Petitioner does not offer any convincing explanation that his failure to file was due to reasonable cause and not willful neglect.  The taxpayers obtained an extension of time to file their return to August 15, 1997, but they did not file their return until 19 months later.  Petitioner testified that in 1995, he had "an incident of Bells Palsy which caused a paralysis of the right side of the face, which did not resume to near normal until about two and a half years later."  Yet, petitioner offers no substantiating evidence of such illness and, more importantly, has not provided any showing that such illness prevented either the petitioner or his wife from filing the return on time.  Moreover, a review of the 1996 tax return shows that despite petitioner's illness, petitioner earned $88,701.79 in wages as a banker working for Citicorp and that he and his wife received an additional $18,967 in capital gains from their stock transactions

for the year.  Petitioner seemingly was able to earn significant wages and conduct transactions resulting in capital gains, but he was unable to file his tax return on time.[3]  Under the circumstances presented in this case, we hold that petitioner has not established reasonable cause for the late filing of his tax return, and we sustain the imposition of the addition to tax for late filing.

Petitioner also contends that the interest assessed must be abated because of communications he had with the PSO.  He argues that he worked with Ms. Ogle, the PRP caseworker with the PSO, in late 1999 to arrive at the tax payments made toward his tax obligations.  Petitioner's claim is that he made the payment as a payout in accordance with his discussion with Ms. Ogle.  Respondent's Appeals officer, Ms. Sharp, did not testify about this matter, but respondent presented her affidavit with attachments as evidence.  Neither Ms. Sharp nor Ms. Ogle was present at the hearing to testify or be cross-examined.  The record does not clearly show whether petitioner received "an amount due" from an IRS employee and then paid that amount, and the only testimony on the issue is petitioner's claim that he

_____

[3] Petitioner states that his medical issues started in 1995 and extended through 1998, but he and his wife do not list any medical expenses on their Schedule A.  Although this may be the result of an adjusted gross income of $176,344, resulting in 7.5 percent floor for medical expenses of $13,225.80, there is no indication of any medical expenses on the return.

made the required payments for a payout.  Cf. <u>Douponce v.</u>
<u>Commissioner</u>, T.C. Memo. 1999-398 (holding that when a taxpayer
receives "an amount due" from an employee of respondent and then
promptly pays that amount, respondent's failure to abate interest
thereafter is an abuse of discretion).

Petitioner completed a Form 12153 to request a CDP hearing,
but the record reflects a breakdown of communication between the
petitioner and Ms. Sharp with respect to both the scheduling and
purpose of the hearing.  The original date of the hearing was
March 28, 2002.  Ms. Sharp's affidavit and case activity record
indicate that the date was later changed to April 11, 2002.
Petitioner testified that he never received notice of either
hearing date and that there never was a hearing scheduled.  In
addition, petitioner contends that he was told by Ms. Sharp not
to bother attending any hearing if his intent was to dispute the
underlying tax liability, and Ms. Sharp's affidavit does not
clearly contradict this testimony.

In our view, petitioner's failure to appear at a hearing in
the present case was at least partly the result of Ms. Sharp's
misleading him.  The record does not show clearly that petitioner
ever had an opportunity to present his claim that he was notified
of "an amount due" to resolve his tax and made the payment.  If
the Appeals officer had reviewed this matter and denied
petitioner an abatement of interest, we could properly review

that determination.  On the present record we believe petitioner has raised an irregularity in the assessment procedure.  Under these circumstances we consider it appropriate to remand this case for further proceedings as to 1996 concerning the issue of an abatement of interest and particularly whether petitioner made a payment of the amount due in accordance with instructions from respondent's representative (Ms. Ogle).  See Nestor v. Commissioner, 118 T.C. 162, 167 (2002); see also Rivera v. Commissioner, T.C. Memo. 2003-35.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

An appropriate order
will be issued.