Kenneth M. HENSON and Sue B. Henson, Petitioners–Appellants, Cross–Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee, Cross–Appellant.

No. 87–8091.

United States Court of Appeals, Eleventh Circuit.

Jan. 15, 1988.

Frank C. Jones, Michael E. Ross, Camille S. Wright, Atlanta, Ga., for petitioners-appellants, cross-appellees.

Roger M. Olsen, Asst. Atty. Gen., Tax Div., Dept. of Justice, Michael L. Paup, Ann Belanger Durney, Michael J. Roach, Washington, D.C., for respondent-appellee, cross-appellant.

Before HILL and FAY, Circuit Judges, and ALLGOOD [*], Senior District Judge.

FAY, Circuit Judge:

In 1986, the United States Tax Court found taxpayer Kenneth Henson guilty of tax fraud for the 1974 tax year, and assessed a liability of $162,412.20. Henson paid this amount and then appealed the Tax Court's finding to this court pursuant to I.R.C. § 7482(a) (1982) (giving the United States Courts of Appeals jurisdiction to review decisions of the Tax Court).[1] The Commissioner of Internal Revenue subsequently filed a notice of cross appeal challenging the Tax Court's finding that Henson was not liable for any deficiency or addition for the 1975 tax year.[2] For the reasons stated below, we vacate that portion of the holding that deals with the 1974 tax year and remand it for reconsideration; and, we affirm that part of the decision finding no deficiency or addition in 1975.

## BACKGROUND

In 1968, Henson, together with Albert Long and George Smith, formed ALCO Finance, Inc. ("ALCO"), a small loan company. Long owned fifty percent of the company, and Henson and Smith each had a twenty-five percent share. The business prospered; and, in 1974, the three owners discussed expanding the corporation by acquiring one or more smaller loan companies. Of particular interest to them were Swift Loan and Finance Company, Inc., and Swift Loan and Finance of Columbus, Inc. ("the Swift Companies").[3] They decided that the best way to expand the business was by forming a separate holding company which would purchase one or both of the Swift Companies. David Stapleton, an associate in Henson's law office,[4] organized Alco Industries, Inc. ("Alco II") to serve as a holding company. Long's signature appears on these papers, which name him as incorporator. In addition, Long was president and sole shareholder of Alco II.

Henson alleges that in December, 1974, he sold 39,276 shares of his American Family Corporation stock to Alco II in exchange for an unsecured promissory note. The stated purpose of this sale was to provide Alco II with collateral against which it could borrow the money to purchase one of the Swift Companies. A document purporting to contain the minutes of a meeting of the board of directors of Alco II, dated December 13, 1974 and signed by Long, appears to substantiate this allegation.

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Sue Henson has not been accused of fraud and is a party to this action solely because she and her husband filed a joint tax return for the tax years in question. The opinion, therefore, refers only to Kenneth Henson's ["Henson"] activities.

2. The court also dismissed a charge involving a deficiency in 1976. Neither side challenges that ruling, and we will not discuss it in this opinion.

3. Henson also owned an interest in the Swift Companies.

4. Henson has been a litigation lawyer in Columbus, Georgia for many years. The court found the 1974 transaction more questionable because Henson confessed to some familiarity with federal tax law.

A letter dated December 11, 1974 and allegedly sent by Henson to Long spells out the terms of the stock sale.[5] Alco II was to pay four dollars for each share of American Family Corporation stock purchased. Henson agreed to accept an unsecured promissory note for the full amount. Alco II, however, could only use the stock as collateral for a loan that would be used to purchase one of the Swift Companies. If, after thirty days, Alco II had not agreed to purchase one of the companies, then Henson could repurchase the stock at four dollars per share. Henson had until ninety days after the initial sale in which to exercise his option. During this same period, Alco II could force Henson to repurchase the stock at the same price. A promissory note, also dated December 11, 1974, allegedly accompanied Henson's letter. American Family Corporation issued a new stock certificate to Alco II on December 17, 1984, and noted the change in ownership in the corporate books on the following day.

As a result of the initial sale of stock to Alco II, Henson was able to declare a long term capital loss of $177,351.48. This loss largely offset the long term capital gain of $218,297.53 that Henson realized in another business transaction. Then on February 22, 1975, after the tax year was over, Henson exercised his option to repurchase the stock from Alco II, which had not entered into any agreement to purchase one of the Swift Companies. A letter from Henson to Long, signed by Long in acknowledgment, evidences this second transaction.

On March 3, 1975, American Family Corporation issued a dividend check for $2,356.56 to Alco II. Long claims that he signed the check over to Henson in compliance with Henson's own request. The check, however, bears an endorsement in blank. In addition, Henson states that he never received the $2,356.56. Henson did not report the amount in his 1975 tax return.

## TAX COURT FINDINGS

The Commissioner of Internal Revenue, reviewing Henson's tax record for 1974 and 1975, determined that there were some deficiencies and additions for those years. He alleged that Henson fraudulently declared the long term capital loss in 1974 and then fraudulently failed to declare the dividend payment in 1975.[6]

The Tax Court found that there was fraud in 1974. It determined that the entire stock sale transaction was a sham, set up by Henson so that he could offset his large capital gain for that year. The court concluded that Henson staged this transaction solely for his own benefit. It concluded that Alco II never intended to purchase either of the Swift Companies and that Long signed the relevant documents as an accommodation to Henson. And, it found that the execution of both the promissory note and Henson's letter to Long occurred not in 1974, as their dates suggest, but in 1975. This, the court noted, further establishes that Henson set up the mock transaction. The Tax Court expressly relied on Long's testimony to reach its conclusion concerning Henson's 1974 tax returns.

The Tax Court reached a different result with respect to the 1975 tax year. Although the court determined that Henson had received the dividend, it held that there was insufficient evidence to support a finding of fraud.

## STANDARD OF REVIEW

The Tax Court's determinations in this case constitute factual findings. Consequently, we will not reverse them unless

---

5. Long signed this letter to acknowledge that he received it.

6. It was necessary that the Commissioner establish fraud in both cases. I.R.C. § 6501(a) (1982) provides that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." Henson filed the 1974 return on May 16, 1975 and the 1975 return on June 17, 1976. The Commissioner did not issue notice of the deficiencies until August 10, 1983, well beyond the limitations period for both returns. Normally, then, the Commissioner could not bring this action. There is an exception, however, when a taxpayer commits fraud with the intent to avoid paying tax. In such a case, there is no limitations period. I.R.C. § 6501(c)(1) (1982).

they are clearly erroneous. *Korecky v. Commissioner,* 781 F.2d 1566, 1568 (11th Cir.1986) (per curiam). In reviewing the Tax Court's findings, however, we must keep in mind that the Commissioner of Internal Revenue had to prove fraud by clear and convincing evidence. *Id.* Our task, then, is to determine whether the Tax Court clearly erred in finding that there was clear and convincing evidence of fraud. *Webb v. Commissioner,* 394 F.2d 366, 378 (5th Cir.1968).[7]

## LONG'S BIAS & THE 1974 CLAIM

In reaching the conclusion that Henson committed tax fraud in 1974, the Tax Court relied on Long's testimony. According to the Tax Court, there was no evidence that Long had any bias against Henson. We disagree, and find that the facts unequivocally demonstrate Long's extreme bias.

Long and Henson were business partners and friends during 1974 and 1975. Events commencing shortly afterwards, however, illustrate the subsequent deterioration of their relationship. Henson instituted two lawsuits against Alco and Long. The first, in 1977, involved some overdue debenture payments owed to Henson and his family. The second, in 1978, was a shareholder's derivative action alleging that Long, as president of Alco, had mismanaged the company's affairs. After the institution of these lawsuits, Long began aiding the Internal Revenue Service in its investigation of Henson.

These events strongly suggest bias. It is not necessary, however, to rely on inferences. Long himself admitted that the lawsuits upset him, and that he and Henson no longer enjoyed a "cordial" relationship. Further, the Commissioner conceded at trial that Long bore Henson animosity.

The Commissioner does not challenge Henson's contention that Long was, in fact, a biased witness. What the Commissioner does argue is that the Tax Court's decision to credit Long's testimony should not be set aside. He reminds us of the words of the Supreme Court in *Anderson v. Bessemer City,* 470 U.S. 564, at 575, 105 S.Ct. 1504, at 1512, 84 L.Ed.2d 518 (1985):

> When findings are based on determinations regarding the credibility of witnesses, [Fed.R.Civ.P.] 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.... [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Id.* (citations omitted). Based on *Anderson,* the commissioner says, this court should defer to the Tax Court's determination.

We agree that a trial court is in the best position to evaluate the credibility of a witness. The court may in certain circumstances believe some or all of the testimony of a biased witness. Here, however, the situation is slightly different. The Tax Court rested its decision to rely on Long's testimony on a faulty premise: its determination that Long was an unbiased party. Such a conclusion totally ignores the record and particularly the cross-examination of Long. The Tax Court must therefore reevaluate Long's testimony in light of his obvious bias.[8]

The Commissioner claims that even if this court finds that it was clear error for

---

7. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit stated that Fifth Circuit decisions rendered before October 1, 1981 are binding in this circuit.

8. To counter the Commissioner's argument, Henson points to language in *Anderson* stating that when a witness' story is sufficiently inconsistent or implausible, it can be clear error for a trial court to credit that story. *Anderson,* 470 U.S. at 575, 105 S.Ct. 1512. Here, Henson claims, Long's story is so inconsistent that the Tax Court erred in believing it. We do not reach this issue because we resolve the argument based upon the clear record of Long's bias.

the Tax Court to rely on Long's testimony, there is sufficient additional evidence of fraud to support the Tax Court's ruling. First, the Commissioner sketches the scenario: a lawyer sold stock to a corporation in time to offset a significant capital gain, and then repurchased that stock after the tax year was over. As a lawyer, the Commissioner notes, Henson was fully aware of the tax consequences of his actions. Obviously, engaging in a business transaction that has beneficial tax consequences is not enough in itself to show fraud. But, the Commissioner continues, there is substantial evidence from which the Tax Court could have concluded that Henson fraudulently set up the transaction for the sole purpose of obtaining these tax benefits. The Tax Court found that Henson staged the events without Long's knowledge, and that Long signed some of the relevant documents without reading them and did not sign others until 1975, after the stock sale allegedly occurred. In addition, the court determined that, although the stock nominally changed hands, Henson physically had possession of the certificate and Long never even saw it. Finally, the court believed that Alco II did not intend to purchase the Swift Companies and, to the extent that Long did participate in the stock sale, he did so to accommodate Henson.

We agree that this is a significant amount of evidence against Henson. However, virtually all of the information comes from Long's testimony. The Tax Court assessed all of this evidence in light of the erroneous presumption that Long was an impartial witness. The documents are written and dated, showing that the stock transfer took place in December of 1974. Long's testimony is simply worthless to refute the otherwise authenticity of the written documents. Consequently, the court must reconsider all the information in light of Long's bias.

In particular, the Tax Court's finding that two key documents, the letter and the promissory note, did not actually exist until 1975 cannot stand. The letter outlines the details of the stock transaction; and Henson claims to have taken the promissory note from Alco II as payment for the stock.

Both documents, if executed in 1974, not only lend credence to Henson's argument that the transaction actually took place, but discredit Long's contention that he was unaware of the transaction. Long said that the parties may not actually have executed the documents until 1975. But, Long conceded that he was not sure exactly when he saw the documents and that, in fact, it could have been in 1974. The Tax Court accepted Long's statements as evidence that the documents actually were created in 1975. We find that this is clear error. Long's statements are so equivocal that they do not constitute legitimate evidence regarding the date of the documents and do not amount to clear and convincing evidence of fraud. Thus, the Tax Court could not determine that the documents came into being in 1975 and then proceed to rely on that finding in reaching its ultimate conclusion.

## THE 1975 TAX YEAR

The Tax Court also held that the Commissioner had not proven fraud for the 1975 tax year by clear and convincing evidence. Although the court apparently concluded that Henson had received the dividend check at issue, it did not find that the evidence of fraud was sufficiently persuasive. Keeping in mind the deference traditionally accorded to trial courts, we affirm the Tax Court's holding.

## CONCLUSION

For the reasons stated in our discussion, we vacate that part of the opinion finding fraud in 1974. We remand to the Tax Court so that it may reconsider the case, viewing Long as a very biased witness and accepting that there is no evidence that the letter and the promissory note did not exist in 1974. We affirm the remainder of the court's holding.

AFFIRMED in part; REVERSED in part; and REMANDED.