T.C. Memo. 1997-285


UNITED STATES TAX COURT


PATRICIA G. McCULLEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19520-94.                    Filed June 24, 1997.


<u>Ronald W. Blasi</u>, <u>Tracey D. Mason</u>, and Robert Kiser, for
petitioner.

<u>Bonnie L. Cameron</u>, for respondent.



MEMORANDUM FINDINGS OF FACT AND OPINION


PARR, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income taxes and additions to tax for the
taxable years 1984 and 1985 as follows:

| | | Additions to Tax | | |
|------|------------|---------------------------|---------------|-----------|
| Year | Deficiency | Sec. 6653(b)(1)[1] | Sec. 6653(b)(2) | Sec. 6661 |
| 1984 | $13,599 | $  6,780 | * | $  3,390 |
| 1985 | 11,358 | 5,679 | * | 2,840 |

* 50 percent of the interest due on the deficiency in tax

After concessions by the parties, the sole issue for decision is whether petitioner, who failed to report embezzlement income, is liable for additions to tax for fraud.  We hold she is not.

FINDINGS OF FACT

Some of the facts have been stipulated and, with one exception, are so found.  The stipulated facts and the accompanying exhibits are incorporated into our findings by this reference.  Petitioner resided in Duluth, Georgia, at the time of filing her petition in this case.

For the taxable years 1984 and 1985, petitioner timely filed Federal income tax returns, Forms 1040, as a head of household, and as married filing jointly, respectively.[2]  On her tax returns for 1984 and 1985, petitioner reported total income of $14,972 and $109,356, respectively.  Respondent determined deficiencies

---

[1]    All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  All dollar amounts are rounded to the nearest dollar, unless otherwise indicated.

[2]    In February of 1985, petitioner married her second husband, Byron K. Griffith, and the couple filed a joint return for that year.

against petitioner of $13,599 for 1984 and $11,358 for 1985. In determining the deficiencies for the taxable years in issue, respondent made adjustments for the following items: Unreported rental income, embezzlement income, and improper real estate tax and mortgage interest deductions.

Background

Petitioner was raised in a poor neighborhood in Memphis, Tennessee, in a low-income family. At the age of 16, she married her first husband, Charles Edward McCulley (McCulley). The next year petitioner became pregnant and dropped out of high school. Petitioner's daughter and son were born in June of 1973, and July of 1975, respectively. In October of 1977, petitioner and McCulley were divorced.

In 1983, petitioner completed the requirements for a general equivalency diploma (GED), the highest degree she has attained. In 1984, petitioner took courses as a non-matriculated student at Memphis State University for which she received an A, a B, and two failing grades. Petitioner has had no education or training in business or tax matters.

During the years in issue, petitioner became involved in a relationship with Byron Kelly Griffith (Griffith), a man she married in 1985. Griffith physically, mentally, and emotionally abused petitioner. During their separation a neighbor once called police, who arrested Griffith when they caught him choking

petitioner and beating her head against the garage wall. Petitioner divorced Griffith in December of 1988.

From June of 1980 through June of 1986, petitioner was employed by Republic Airlines (Republic) in Memphis, Tennessee. Petitioner was responsible for collecting liquor sales money from a safe at the Memphis Airport where flight attendants made cash deposits after landing.

In November of 1988, a month before petitioner's divorce from Griffith was final, he notified Republic that petitioner had in the past embezzled funds.[3] Republic did not press charges but did inform the Internal Revenue Service (IRS). Thereafter, in May of 1989, the Criminal Investigation Department (CID) of the IRS began auditing petitioner's tax returns for 1984 and 1985. In June of 1989, Special Agents Robert Johnson (Agent Johnson or the agent) and Catherine Parr went to petitioner's current work place. Agent Johnson told petitioner that he was conducting a criminal investigation of her tax liability and that he needed to question her regarding such matter. Petitioner agreed to meet with him to review her tax and bank records, provided her attorney, Kemper Durand (Durand), was present. Thereafter, Agent Johnson and Durand spoke on several occasions regarding the investigation, but Johnson did not try again to speak with petitioner. In July of 1989, the agent requested a power of attorney from Durand on behalf of petitioner, which he received 1

_____

[3]   The embezzlement had stopped years before. In fact, petitioner had left Republic in good graces in 1986.

week later.  On August 10, Agent Johnson contacted Durand to set up an appointment.  During their conversation, Durand made certain statements that Agent Johnson took as seeking a complete concession; thereafter the agent decided "to proceed on with [his] investigation" without ever meeting face to face with either Durand or petitioner.  The agent's final report (the report), in which he recommended prosecuting petitioner for tax evasion under section 7201, was based primarily on statements made by petitioner's hostile and estranged husband, as well as information supplied by people other than petitioner, to establish her intent in failing to report the embezzled funds.

Despite the report, petitioner was not prosecuted under section 7201 for tax evasion.  On March 12, 1991, she was indicted, instead, for the lesser offense of willfully filing a false tax return for 1984 (count one) and 1985 (count two) in violation of section 7206(1).  Petitioner entered into a negotiated plea (plea) in the United States District Court for the Northern District of Georgia, wherein she pleaded guilty to count one of the indictment.  Count two was dismissed.

Petitioner was sentenced to 5 years' probation, 200 hours of community service, and was ordered to pay $16,552, plus interest and penalties, in restitution.  This amount appears to represent the 1984 deficiency plus then-accrued interest.[4]  Petitioner has

---

[4]    Although the parties stipulated (without any explanation) that the restitution was based on the deficiencies for the two years in issue, we do not see how this is mathematically

(continued...)

paid the full restitution amount and served all of the community hours required of her. Petitioner's probation was terminated early, because she completed the terms of her probation in an exceptional manner.

OPINION

Respondent, pursuant to section 6653(b), determined that petitioner is liable for additions to tax for fraud and interest thereon for failing to report embezzled income on her 1984 and 1985 tax returns. Petitioner admits that she embezzled money from her former employer and that she did not report the income. She asserts, however, that she did not intend to evade taxes. Rather, petitioner claims that she did not know that embezzlement income is taxable. If petitioner prevails, respondent is barred by the section 6501(a) limitations period from assessing and collecting any tax and additions thereto from her for the years in issue.

Respondent argues that petitioner's failure to report the embezzlement income in 1984 and 1985, her guilty plea under section 7206(1), combined with withholding bank records from tax preparers and respondent, and refusing to sign an amended return reporting the embezzled funds, establishes petitioner's requisite intent to commit fraud. For the reasons discussed below, we agree with petitioner.

---

[4](...continued)
possible. We therefore disregard the stipulation as clearly erroneous.

Under section 6653(b) respondent has the burden of proving by clear and convincing evidence that there is an underpayment of tax and that some part of the underpayment was due to fraud. See sec. 7454(a); Rule 142(b). Respondent must show that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Where a taxpayer claims ignorance of the law or a good-faith belief that he was not violating any of the provisions of the tax laws, the Commissioner must negate that claim by clear and convincing evidence. Cheek v. United States, 498 U.S. 192, 202 (1991); see also Niedringhaus v. Commissioner, 99 T. C. 202, 217 (1992). For purposes of the section 6653(b)(2) interest computation, respondent must also prove the portion of the underpayment attributable to fraud. Sec. 6653(b)(2); DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence, because direct proof of the taxpayer's intent is rarely available. Rowlee v. Commissioner, supra. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v.

Commissioner, 56 T.C. 213, 223-224 (1971).  The intent to conceal or mislead may be inferred from a pattern of conduct.  See Spies v. United States, 317 U.S. 492, 499 (1943).

1.  Guilty Plea Under Section 7206(1)

A conviction[5] under section 7206(1)[6] does not collaterally estop a taxpayer from denying fraud under section 6653(b). Wright v. Commissioner, 84 T.C. 636 (1985); see also Considine v. United States, 683 F.2d 1285 (9th Cir. 1982); Cox v. Commissioner, T.C. Memo. 1985-324; Wheadon v. Commissioner, T.C. Memo. 1992-633.

Under section 7206(1) it is a crime to willfully make and submit any return verified by a written declaration that is made under penalties of perjury which the taxpayer does not believe to

---

[5]     A guilty plea is equivalent to a conviction after trial for the purpose of collateral estoppel.  See, e.g., Johnson v. Sawyer, 47 F.3d 716, 722 (5th Cir. 1995).

[6]     SEC. 7206 provides, in relevant part:

Any person who--

        (1) Declaration under penalties of perjury-- Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; *    *    *

*         *         *         *         *         *         *

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 * * * or imprisoned not more than 3 years, or both, together with the costs of prosecution.

be true and correct as to every material matter.[7]  The intent to evade taxes is not an element of the crime charged under section 7206(1).  Wright v. Commissioner, supra at 643; see also United States v. Tsanas, 572 F.2d 340, 343 (2d Cir. 1978); United States v. DiVarco, 484 F.2d 670, 673-674 (7th Cir. 1973); Siravo v. United States, 377 F.2d 469, 472 n.4 (1st Cir. 1967).

Thus, although petitioner's conviction under section 7206(1) may be some evidence of fraudulent intent, it does not establish as a matter of law that she intended to evade taxes.  Wright v. Commissioner, supra.

2. Badges of Fraud

A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud.  See Holland v. United States, 348 U.S. 121, 137 (1954).  The mere failure, however, to report income is not sufficient to establish fraud.  Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-179; Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63).  Fraud may not be found under "circumstances which at the most create only suspicion."  Katz v. Commissioner, 90 T.C. 1130, 1144 (1988).

Besides failure to report income, other badges of fraud which may be taken into account include:  the making of false and inconsistent statements to revenue agents, Grosshandler v.

---

[7]     Petitioner's plea did not specifically mention the embezzlement income.

Commissioner, 75 T.C. 1, 20 (1980); the filing of false documents, Stephenson v. Commissioner, 79 T.C. 995, 1007 (1982), affd. 748 F.2d 331 (6th Cir. 1984); understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Korecky v. Commissioner, supra.

The taxpayer's education and sophistication are also relevant to the determination of fraud. Halle v. Commissioner, 175 F.2d 500, 503 (2d Cir. 1949), affg. 7 T.C. 245 (1946); Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).

Petitioner admits that she failed to report income of $57,470 in 1984 and $18,524 in 1985. Accordingly, pursuant to section 6653(b)(1), respondent has proven that an underpayment of tax exists for each of the years in issue. Thus, we now must decide whether petitioner intended to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner, 80 T.C. at 1123, and cases cited therein.

Petitioner testified that she did not know, until the IRS investigation began, that embezzlement income was taxable, and at that point she cooperated fully with respondent. Respondent points to petitioner's failing to report the embezzlement income, withholding bank records from tax preparers and respondent, and refusing to sign an amended return reporting the embezzled funds,

as evidence of attempts to conceal.  The problem with respondent's scenario is that--except for the failure to report the embezzlement income--it is not supported by the facts.

First, the evidence does not show that petitioner withheld any information from respondent or refused to cooperate in any way with respondent.

During the 10 months Agent Johnson spent investigating petitioner, he never interviewed her in an effort to establish her state of mind in failing to include the illegal income on her returns.  In fact, Agent Johnson testified that on the only occasion when he met with petitioner she was pleasant, cooperative, and willing to review her tax and bank records with him if her attorney were present.  This was perfectly reasonable, since Agent Johnson was conducting a criminal investigation. Durand, petitioner's attorney, did in fact speak with the agent on several occasions about the ongoing investigation and promptly provided a power of attorney when requested.  At trial, Agent Johnson acknowledged that petitioner cooperated with the investigation, and that he did not intend in his report to indicate otherwise.  It was Agent Johnson who severed all contact with petitioner after Durand allegedly gave Agent Johnson the impression that he, Durand, was "looking for a letter from the IRS forgiving someone for stealing money from the airlines." From that point forward, Agent Johnson made no further effort to

schedule an appointment with petitioner, even though she consistently expressed a willingness to meet.

At trial and in his report, Agent Johnson indicated that petitioner "withheld bank statements" from the preparers of petitioner's 1984 and 1985 returns, Patricia Montague (Montague) and Louis Traylor (Traylor), respectively. However, Montague and Traylor testified that they never asked petitioner for any bank records, that she was cooperative and provided them with all of the tax information that they requested, and that she did not in any way hinder them in preparing the returns.

Moreover, the evidence specifically rebuts respondent's claim that petitioner failed to furnish Agent Johnson with her bank records and that summonses had to be served on petitioner's banks to obtain them. At trial Agent Johnson himself admitted that he never asked petitioner for any bank statements, or for that matter, any other documentary information relating to her tax liability for the years in issue.

Respondent's case is based almost entirely on allegations made by Griffith, petitioner's ex-husband, to Agent Johnnson.[8] However, Griffith was not a reliable source. At the time he was interviewed, Griffith had a strong motive to lie. He and

---

[8]    The bias of witnesses giving contradictory evidence must be considered. See Anderson v. Bessemer City, 470 U.S. 564, 575 (1985); Henson v. Commissioner, 835 F.2d 850, 853 (11th Cir. 1988), affg. in part, revg. in part and remanding T.C. Memo. 1986-303; Ishijima v. Commissioner, T.C. Memo. 1994-353. Griffith, who was suffering from liver cancer, did not testify at trial.

petitioner were in the midst of a fractious divorce.  Apparently in an effort to hurt petitioner (or at least to gain the upper hand) Griffith reported petitioner to the authorities.  Griffith physically, mentally, and emotionally abused petitioner during the entire course of their relationship.  Moreover, Griffith had other credibility issues.  In 1989, Griffith, a securities broker, was fined and barred from the National Association of Securities Dealers (NASD) for converting the funds of three different clients to his own use.

We also note that respondent afforded Griffith innocent spouse protection for 1985, despite the fact that he co-signed the joint return with full knowledge of the embezzled funds.  If the agent had spoken to petitioner, he would have known that Griffith knew petitioner was stealing before he married her, that the stealing continued throughout their marriage, and that Griffith never asked petitioner to stop.

We also find misleading respondent's characterization of petitioner's "refusal to sign" an amended return prepared by her ex-husband's accountant as further evidence of her intent to willfully evade her Federal income tax for the years in issue. It was Griffith, not Agent Johnson, who asked petitioner to sign the amended return.  At that time the couple was in the middle of a difficult divorce, and her refusal to trust Griffith was not unreasonable.  Moreover, Griffith's accountant testified that he had prepared the amended return exclusively on information

supplied by Griffith and that he had no contact with petitioner during the preparation process. Petitioner testified that her attorneys advised her not to sign the amended return. Based on the testimony of petitioner, the tax preparers, and Agent Johnson himself, we disagree with respondent's assertion that petitioner's failure to sign the amended return shows her intent to evade taxes.

Finally, in addressing the other so-called badges of fraud, we find that Agent Johnson's own testimony exonerates petitioner. He testified that petitioner never denied receipt of the embezzled funds, nor did she attempt to conceal the money from the IRS. She made no false entries on any book or records, she did not backdate or postdate any documents, she did not maintain two sets of books, nor did she claim fictitious deductions. She did not hide any bank accounts, she did not maintain a safe deposit box or otherwise hoard any funds, nor did she keep accounts under false names. She did not make any false statements related to the preparation and examination of her 1984 and 1985 tax returns, nor in any other way did she hinder the examination of those returns.

In addition, we had an opportunity to closely observe petitioner's demeanor at trial. She answered questions freely and without evasion, and we found her testimony credible.

In light of the foregoing, we find that respondent has not proven by clear and convincing evidence that petitioner engaged

in conduct intended to conceal, mislead, or otherwise prevent the collection of her 1984 and 1985 taxes.  Accordingly, respondent is barred by the section 6501(a) limitations period from assessing a deficiency against petitioner for the years in issue.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.