The **MILDRED COTLER TRUST, John W. Hughes, Shirley Mellon, Trustees, The Justine Chelsea Brandy Trust, Trustees, and Estate of Mildred Cotler, Executrix, and Shirley Mellon Trust, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 98–6095.

United States Court of Appeals, Second Circuit.

Argued May 5, 1999.

Decided July 9, 1999.

John W. Hughes, New York, NY, for Appellants.

David English Carmack, Tax Division, Department of Justice, Washington, DC. (With him on the brief were Regina S. Moriarty, and Loretta C. Argrett, Assistant Attorney General. Zachary W. Carter, United States Attorney, was of counsel), for Appellee.

Before: FEINBERG, LEVAL, and MICHEL, Circuit Judges.*

MICHEL, Circuit Judge.

Plaintiffs–Appellants, The Mildred Cotler Trust, et al., appeal from the judgment in favor of the United States entered on March 17, 1998 by the United States District Court for the Eastern District of New York (District Judge John Gleeson), following a bench trial. *See The Mildred Cotler Trust, et al. v. United States*, 2 F.Supp.2d 264 (E.D.N.Y.1998). The Mildred Cotler Trust, et al., filed the instant tax refund action in November 1993 seeking recovery of $229,314.57, plus interest, which was paid to the United States by the Estate of Mildred and Irving Cotler in response to a collection action commenced in July 1990 in the New York County Surrogate's Court by the Internal Revenue Service ("IRS") to recover unpaid taxes, penalties, and interest, previously assessed against the Cotlers for tax years 1972 through 1979. The Cotlers had tendered sufficient funds to pay the amount due, even before they were formally assessed; they were then assessed and soon thereafter all moneys tendered by the Cotlers were erroneously refunded by the IRS. Therefore, the assessed amount remained outstanding until seven years later when it was paid by the Estate of Mildred and Irving Cotler. It is this amount The Mil-

dred Cotler Trust, et al., now seek to recover. The district court ruled, however, that The Mildred Cotler Trust, et al., were not due a refund because the additional tax liability assessed for the tax years 1972 through 1979 was unpaid until the action in Surrogate's Court was commenced, a collection action that was lawfully based on the assessment and thus not time-barred.

On appeal, the government abandoned that position, which had by then been rejected by six courts of appeal. Instead the government argues fraud as an alternate ground of affirmance. Under the applicable statute in cases involving fraudulent tax returns the government faces no statute of limitations on making an assessment, and in addition may file a collection action, without assessment, at any time. Even assuming this new ground was squarely presented and hence not waived, the government neither proved fraud, nor was fraud ever conceded by the taxpayers. Despite having the opportunity and burden to prove fraud before the district court, the government offered no evidence of fraud at trial. As the government was well aware of the fraud theory as of the time of the trial, it has no right to a second chance on remand to offer any proof of fraud. We therefore reverse the district court judgment.

## BACKGROUND

In April 1982, the IRS informally proposed adjustments (including penalties) on the income tax returns of Mildred and Irving Cotler for tax years 1972 through 1979. The proposed adjustments related to unreported income received by Mr. Cotler in connection with illegal labor union activities for which he was convicted. Mrs. Cotler was found by the IRS to be an innocent spouse, not involved in these ac-

* The Honorable Paul R. Michel, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

tivities, although the Cotlers filed joint returns.

In July 1982, Mr. Cotler paid the IRS the sum of $107,570, the amount of the initially proposed additional income tax liability, but contested the assertion of any penalties. This was an advance payment, as no formal assessment of the Cotlers' tax liability had yet been performed by the IRS. Mr. Cotler's accountant proceeded to appeal the proposed adjustments to the IRS. Mr. Cotler died in October 1983. In December 1983, the IRS sent a Notice of Deficiency for $99,022 in tax liability and $51,527 in penalties to the Estate of Irving Cotler, and to Mildred Cotler, in connection with the 1972 through 1979 tax years. Taxpayers (Mildred Cotler individually, and as executrix of her husband's estate) filed a petition in the Tax Court contesting the deficiency. In May 1984, an Order was entered by the Tax Court ratifying a compromise settlement agreement reached between the IRS and Mrs. Cotler. In June 1984, she paid the sum of $25,764, exactly one half of the penalty amount asserted in the Notice of Deficiency, to the IRS to satisfy the penalty portion of the settlement. The parties also agreed that the IRS would perform a formal assessment to fix the amount of tax owing and due. By June 1984, therefore, the government had received the entire amount of the penalty agreed to in the settlement agreement, and the entire amount of tax owed by the Cotlers for 1972 through 1979, according to all pre-assessment notices from the IRS.

On September 4, 1984, in accordance with the settlement the IRS formally assessed the liability of the Cotlers. The assessment was for $99,022 in liability, plus $43,186.71 in interest. An amount in excess of this assessment had already been paid by the Cotlers, as noted above.[1] This assessment was not reflected in the IRS computer records until October 21, 1984, seven weeks after the assessment was made; however, as of the date the assessment was performed, in accordance with the settlement, the "hold" on the Cotlers' IRS account was lifted. As a result, the Cotlers' IRS account now showed a substantial credit in the form of the payments made in 1982 and 1984, and because of the delayed posting of the assessment amount, it showed no taxes owing and due. Therefore, between October 1, 1984 and October 15, 1984, the IRS sent Mrs. Cotler a series of eight checks totaling $172,717.94. These checks were determined at trial to have been issued to Mrs. Cotler in error.[2] On October 21, 1984, the amount of the assessed tax liability was posted to the Cotlers' now empty account with the IRS. Because the computer indicated no money was credited to the account, a Final Notice was sent to the taxpayers by the IRS on November 16, 1984 requesting payment of $157,676.23 in tax liability and interest for the years 1972 through 1979.

On April 3, 1985, in response to a letter from the Cotlers' representative[3], the IRS sent Mrs. Cotler a letter "[i]n reply to [Mrs. Cotler's representative's] letter of Oct. 31, 1984 regarding the balance due on the 1972 through 1979 periods" indicating,

1. The $107,570 tendered by Mr. Cotler apparently earned interest the entire time (over two years) it was in the Cotlers' IRS account. Once this interest was calculated, and added to the tendered amount, the total credit in the Cotlers' account with the IRS exceeded their tax liability as assessed by the IRS.

2. Until the formal assessment was entered into the account, a credit existed. A "hold code" prevented the reflection in the account of this credit upon review by a computer. Before the assessment was entered into the account, but after the hold code was lifted,

the account showed a significant credit. It was during this time period that the refund checks were erroneously issued to Mrs. Cotler.

3. The Cotlers' representative sent the IRS a letter on October 31, 1984 stating that the taxes had been assessed and paid, and enquiring as to the status of the account. Actually, the taxes had been paid in advance, then assessed, and erroneously refunded, leaving the IRS computers as of October 21, 1984, showing that they had not been paid.

inter alia, that they were looking further into the matter and that "[t]he payments you submitted were credited to the Individual returns and refunded in October of 1984." No further payments were made, and, as far as the record on appeal indicates, no further communications were sent for nearly six years. Mildred Cotler died in August 1987.

On July 2, 1990, the IRS filed a Proof of Claims against the Estate of Mildred and Irving Cotler (the "estate") in the Surrogate's Court for New York County. The Proof of Claims demanded payment of taxes, penalties and interest totaling $229,-314.57 for the years 1972 through 1979. On November 6, 1991, the estate paid the IRS in full.

On November 12, 1993, The Mildred Cotler Trust, et al., brought an action in the district court against the government for a refund of $229,314.57 (plus interest) which they had paid in 1991 in response to the IRS's collection proceeding. The Mildred Cotler Trust, et al., filed a motion for summary judgment in March 1995 claiming that the government could not rely on the pre-refund assessment of income tax to recover the erroneous refunds in 1991. According to the estate, the assessment had been extinguished by payment in full. The district court denied the motion for summary judgment, and held a bench trial, following which it held that the IRS could rely on the 1984 assessment of income tax to collect the unpaid taxes resulting from the erroneous refunds. The sole witness called by the IRS at the bench trial was an IRS employee who explained the computer error which caused the refunds to be sent to the Cotlers. The court found that the refunds were made in error. No witness was called by the government as to any fraud.

We have jurisdiction under 28 U.S.C. § 1291 (1994).

## DISCUSSION

### I. The Government's Abandonment of the Ground on Which the District Court Relied

On appeal, the government has expressly abandoned its argument below, on which the district court relied, that it was entitled to recover the unpaid taxes based on the September 1984 assessment of income tax. Consistent decisions by six Courts of Appeals[4] have rejected such a theory. *See United States v. Wilkes*, 946 F.2d 1143, 1152 (5th Cir.1991) ("[a]s a taxpayer makes payment against a tax assessment, the assessment is extinguished in the amount paid and cannot be revived by the IRS' giving the taxpayer an unsolicited, erroneous refund.... The refund sent by the IRS as a result of a posting error did not revive the extinguished portion of the assessment."); *O'Bryant v. United States*, 49 F.3d 340, 347 (7th Cir.1995) ("[w]hen a taxpayer mails the IRS a check in the full amount of his assessed tax liability, and the IRS cashes it, the taxpayer's liability is satisfied, and unless a new assessment is made later on, any erroneous, unsolicited refund that the IRS happens to send the taxpayer must be handled on its own terms, not under the rubric of the assessed liability."); *Clark v. United States*, 63 F.3d 83, 87 (1st Cir.1995) ("when a taxpayer tenders payment on a tax assessment, that payment extinguishes the assessment to the extent of the payment ... [a]n erroneous refund does not revive an extinguished assessment."); *Bilzerian v. United States*, 86 F.3d 1067, 1069 (11th Cir.1996) ("today we join these circuits and hold that once a tax liability is paid, no erroneous refund ... can revive it."); *Singleton v. United States*, 128 F.3d 833, 837 (4th Cir.1997) ("our sister circuits uniformly held that the IRS had acted improperly by failing to follow the statutory methods for reclaiming an erroneous refund"); *Stanley v. United States*, 140 F.3d 1023, 1027–28 (Fed.Cir.1998) ("the Government argued

---

4. These six circuits, the First, Fourth, Fifth, Seventh, Eleventh and Federal, are the only

Circuits to have so far decided this issue. Thus, no circuit has held to the contrary.

before the Court of Federal Claims that the erroneous refund could nevertheless be recovered on the basis of that [previous] assessment.... [T]he Government on appeal wisely does not pursue this argument.").

Meanwhile, in response to these uniform decisions, on May 4, 1998, the IRS issued an Action on Decision determining that in situations comparable to the one in the instant case, the assessment does not survive the payment, but must be considered extinguished by the payment, and therefore the collection of unpaid taxes after subsequent erroneous refunds cannot be based on the original assessment. *See* 1998–18 I.R.B. 4. The government has abandoned the argument on which the district court relied and does not ask us to affirm on that basis. We, therefore, need not consider the argument. Instead, the government asks that we affirm on a different basis—that the 1972–79 Cotler returns were fraudulent and that the amounts due may therefore be assessed or collected at any time. We turn to that argument.

## II. The New Government Theory

According to the government, the Cotlers filed fraudulent returns from 1972 through 1979, and therefore, there is no limitations period prohibiting, and here nothing else prohibits, a collection action for the underpaid tax for the 1972 through 1979 tax years in 1990. The government's argument relies on the portion of 26 U.S.C. § 6501(c)(1)[5] which provides that in "the case of a false or fraudulent return with the intent to evade tax ... a proceeding in court for the collection of such tax may be begun without assessment, at any

time." *See Lowy v. Comm'r,* 288 F.2d 517, 519–20 (2d Cir.1961).

The government argues that, as the returns were fraudulent, collection actions can be begun any time. In lieu of proving fraud, however, the government asserts that the taxpayers stipulated in the Tax Court that fraud penalties under 26 U.S.C. § 6653(b) applied to each of the years 1972 through 1979, and that these penalties can only apply where the underpayment of tax on the return is due to fraud. The government argues, moreover, that reliance on the fraud "exception" to the statute of limitations was raised by the government in the district court, although not mentioned, much less relied upon by the district court, in its opinion.

## III. Possible Waiver of the Fraud Issue

We question, first of all, whether the fraud theory now argued by the government was indeed fairly raised in the district court. As stated by the Supreme Court:

> It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below. In *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941), the Court explained that this is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence."

*Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Nowhere in its answer, summary judgment papers or trial evidence did the government offer proof of fraud. Accordingly,

---

**5.** 26 U.S.C. § 6501: Limitations on Assessment and Collection:

(a) General rule. Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)

. . . .

(c) Exceptions.

(1) False return. In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, *or a proceeding in court for collection of such tax may be begun without assessment, at any time.* (emphasis added.)

nowhere did Mrs. Cotler offer any contrary proof. The government argues, nevertheless, that this issue was raised below. But in its briefs it points only to one entry in the government's Proposed Findings and Conclusions submitted to the district court shortly before trial, but not adopted by the judge. Upon being questioned further about this at oral argument before us, government counsel indicated that near the end of his argument at the district court, the United States Attorney again mentioned this issue. From our inspection of the record below, it appears that actually the issue was raised by the lawyer for The Mildred Cotler Trust, et al., who stated that:

> There is one other issue that was raised in [the government's] proposed findings and conclusions I received last week that I didn't really expect, but I would just like to comment on, and that is that the position that because these tax returns 1972, 1973 tax returns were fraudulent then there is an exception to the statute of limitations with respect to the collection of any tax for that year.... I would like to actually ask if I could amend my proposed finding of fact because this issue wasn't raised prior to me sending in my proposed finding of fact.... There was no finding of fraud with respect to these tax returns....

In other words, The Mildred Cotler Trust, et al., did not feel they were fairly presented with the issue, and given a chance to respond to the belated fraud allegations before the district court. The proposed findings were not submitted until four and one-half years after the suit was filed and only one week before trial. The district court did not respond to their request, and accordingly, The Mildred Cotler Trust, et al., did not amend their proposed findings of fact, or offer any evidence on point. To our reading the district court ignored the issue as if irrelevant.

■ It would be difficult, based on these circumstances, to find that the issue was fairly raised in the district court, and that

The Mildred Cotler Trust, et al., had an adequate opportunity to present its own evidence on this issue. We find it difficult to decide whether this issue was duly advanced before the district court, and therefore preserved for appeal. We hesitate, however, to treat the issue as waived, especially as it can be readily decided on this record against the party that had the burden of proof, and may have waived the issue. In these circumstances, we therefore exercise our discretion to decide this issue, even if deemed raised for the first time on appeal. *See, e.g., Singleton,* 428 U.S. at 120, 96 S.Ct. 2868; *Bornholdt v. Brady,* 869 F.2d 57, 68 (2d Cir.1989).

## IV. Failure of Proof of Fraud

■ In order to avoid the three-year statute of limitations pursuant to the fraud exception under 26 U.S.C. § 6501(c)(1), the government must prove that the tax returns filed by the Cotlers were indeed fraudulent. That the government, not the estate, had the burden of proof is in no doubt: "In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary." 26 U.S.C. § 7454(a); *see also Anastasato v. Comm'r,* 794 F.2d 884, 889 (3rd Cir.1986) ("In a fraud case both the burden of production and the ultimate burden of proof are placed on the Commissioner."). Moreover, the government can only succeed in lifting the bar of the 26 U.S.C. § .6501(a) statute of limitations if it proves fraud "by clear and convincing evidence." *Anastasato,* 794 F.2d at 889; *see also K.M. Henson v. Comm'r of Internal Revenue,* 835 F.2d 850, 852 (11th Cir.1988) ("It was necessary that the Commissioner establish fraud...."). In the instant case, no evidence at all was introduced by the IRS to sustain its burden of proving fraud. The government argues that it need not have *proved* fraud because it says fraud was admitted by Mrs. Cotler.

## V. Alleged Admission of Fraud

▇▇ The two record documents the IRS relies upon to show a concession or finding of fraud are: (1) a compromise agreement between the parties, the essential figures of which were adopted by the Tax Court; and (2) a bare citation to 26 U.S.C. § 6653 in the Tax Court's Order. J.A. at A119; J.A. at A128. According to the IRS, the agreement constituted a "stipulation" by the taxpayers in the Tax Court that fraud penalties applied to their case, and therefore, that they had committed fraud. The compromise agreement settled the penalty demand by Mrs. Cotler agreeing to make, and the government agreeing to accept, payment of an amount equal to only about one-half of the penalty amount the government could have been entitled to collect if it had proven fraud. The government argues that it was not required to collect the entire amount of the penalty amounts to allege fraud now, because, as stated in the agreement, "Mildred Cotler is an innocent spouse; fraud penalty does not apply to her." J.A. at A122. Such a bare reference to "fraud penalty," without further explanation is insufficient to establish a concession of fraud on the part of the taxpayers. In the instant case the IRS expressly stated that Mrs. Cotler was innocent of fraud. While alive, Mr. Cotler repeatedly denied any fraud and refused to pay noticed fraud penalties. His representative appealed the tax fraud allegations to the IRS and, after his death, to the Tax Court.[6] Nowhere in the agreement does Mrs. Cotler abandon her late husband's denial and admit to fraud on his part. Nor is it clear she would have had the right and capacity to do so on behalf of her deceased husband.

It is true that Form 5278 as prepared by the IRS listed for each year in dispute as "Addition to the tax" a certain amount, accompanied by the notation "Section 6653(b), IRC (per settlement.)". Below this notation appears another, stating "Mildred Cotler is innocent spouse—fraud penalty does not apply to her." Further, Form 870 AD, as prepared by the IRS, listed "DEFICIENCIES[:] Sect. 6653(b) IRC" with an amount by each year in dispute. These amounts, moreover, total just over $25,000, the penalty payment tendered by Mrs. Cotler in June, 1984. These documents were all sent to the Cotlers' then-attorney with a covering letter dated February 2, 1984, which requested that they "Please return the signed original as soon as possible." From all these documents, read together, it could be argued, and in essence it is argued by the government, that the agreement contained a stipulation that the returns were fraudulent. Undermining such an argument, however, is the fact that from the very first assertion of penalty by the IRS, Mr. Cotler denied fraud, and never abandoned this position.

Finally, in the "Closing Agreement on Final Determination Covering Specific Matters," another document the IRS sent, was a stipulation that "the taxpayer agrees, notwithstanding the period of limitations on assessment and collection to the assessment and collection of this deficiency with penalty and interest as set forth in this agreement." We question whether this stipulation would have been necessary if the taxpayers, as asserted by the government now, were stipulating to filing fraudulent returns, as opposed to agreeing to pay a reduced penalty as part of a compromise settlement agreement. Therefore, we think the agreement to pay such penalty amounts was analogous to a plea of nolo contendere in a criminal case or a consent decree in a court proceeding agreeing to restitutionary or remedial actions without admitting any violations. In-

---

**6.** Although Mr. Cotler was convicted of labor racketeering, he was never convicted of tax fraud. Mr. Cotler, moreover, maintained before the IRS and the Tax Court, that in his racketeering crimes he acted merely as a conduit for others and, thus, received no income.

We need not try to evaluate this assertion, and, in any event could not as the record on appeal contains no information to support any evaluation. The crucial fact is that the Tax Court never found civil tax fraud.

deed, at page two of the Closing Agreement on Final Determination Covering Specific Matters, Mrs. Cotler and the Commissioner:

> [d]etermined and agreed for Federal income tax purposes that ... except to the extent expressly determined in this agreement, this agreement does not determine the applicability or inapplicability of penalties or interest. In the preceding sentence "penalties" includes additions to tax or additional amounts authorized by Subchapter A of Chapter 68 of the Code.

The penalties the IRS now asserts are pursuant to 26 U.S.C. § 6653(b) and are due to the filing of fraudulent returns. As such they are penalties of the clearest kind. That the parties took pains to cover all additions to tax and not merely fraud penalties actually underscores their concern that the agreement was not to operate by implication but only by express provision as to any amounts in addition to the taxes themselves. Further, the agreement as summarized in the Tax Court Order made specific reference to certain time bars and expressly waived them. For example, it "stipulated" that "petitioners waive the restriction contained in I.R.C. § 6213(a) prohibiting assessment and collection of the deficiencies in tax and additions to tax (plus statutory interest) until the decision of the Tax Court has become final." We think that if taxpayers had likewise agreed to waive the time bar of section 6501(a) "prohibiting respecting assessment and collection" after three-years, the agreement would have cited this section in express and parallel language, or else it would have expressly referred to the "exception" to the three-year time bar of section 6501(c). But it did neither. Accordingly, we are unpersuaded by the government's argument that the agreement stipulated to fraud so as to invoke the fraud exception to the limitations period of section 6501.

In addition, the Tax Court made no finding of fraud at all. In its half-page stipulated decision, the Tax Court merely recited the settlement amounts reached by the parties. Specifically, where the settlement agreement contained a section entitled "Additions to the tax" and noted "Section 6653(b), IRC (per settlement)," the Tax Court Order listed such deficiencies under a column headed "Additions to the Tax I.R.C. § 6653(b)." J.A. at A120; J.A. at A128. Nowhere in its opinion is the word "fraud" mentioned. Nor are any facts concerning Mr. Cotler's alleged fraud discussed. The only arguable reference to fraud is a simple citation, without explanation, to the fraud penalty statute, 26 U.S.C. § 6653, in the Tax Court Order. This is an insufficient substitute for clear and convincing proof of fraud. Nor can the citation constitute an implied finding of fraud, for no evidence of fraud was received, discussed, or accepted in any way by the Tax Court. Furthermore, the citation cannot constitute an acceptance by the Tax Court of an admission of Mr. Cotler's fraud by Mrs. Cotler, for no such expression by her can be found in the agreement. Indeed the only relevant reference in the agreement is to "fraud penalty" but it does not admit fraud by Mr. Cotler; it merely denies fraud by her, stating that even the IRS agreed "Mrs. Cotler is an innocent spouse." In short, the references to § 6653(b) in the settlement documents are ambiguous. One cannot tell whether they constitute an admission of fraud by the taxpayer, or simply a reference to the statute giving rise to the claim that is being settled without an admission of fraud.

Therefore, the fraud exception to the three-year statute of limitations on assessment and collection of the overdue taxes is not invoked on the facts of this case.

## CONCLUSION

We recognize that under our decision The Mildred Cotler Trust, et al., will receive a windfall. We nevertheless find that the IRS utterly failed to prove fraud before the district court. Neither Mrs.

Cotler's compromise settlement payment, nor the Tax Court's citation to the statute qualifies as an admission of fraud by Mrs. Cotler or a finding of fraud by the Tax Court. No less than private parties, in the absence of a clear admission, the government must prove its case, which it failed to do in the instant action. Furthermore, the IRS has no right to a second opportunity on a remand to try to prove fraud. Therefore, as the government has abandoned the sole ground ruled upon by the district court, and the alternate ground has insufficient factual basis, the judgment, is

*REVERSED.*